Williams, Judge,
delivered the opinion:
Plaintiff, a common carrier, owns and operates various lines of railroad extending from Wisconsin to the Pacific Coast. The line from Ashland, Wisconsin, to Portland, Oregon, and branches therefrom in the State of Washington were built by the aid of grants of public land, under the organic act of July 2, 1864 (18 Stat. 365), and other acts of Congress. Another line from St. Paul to Duluth, Minnesota, was similarly constructed under an act of Congress approved March 3, 1857 (11 Stat. 195), and subsequent acts.
Plaintiff, alone or in connection with other initial or intermediate carriers, in the period between July 17, 1920, and June 7, 1924, transported certain property of the United States at the instance of the United States Shipping Board Emergency Fleet Corporation, and delivered it to the designated consignees at Seattle, Olympia, and Tacoma, Washington, and at Portland, Oregon. For these shipments plaintiff rendered its bills at full commercial rates. Defendant’s accounting officers refused payment in full, and caused payment to be made with deductions for land-grant, the amount withheld being $6,946.03. As to a portion of these payments plaintiff protested, and as to others accepted the amounts tendered without protest.
During April, May, and June, 1920, shipments of oil belonging to the United States were consigned by a private *571 concern at Tulsa, Oklahoma, to the United States Shipping Board at Riverside, Minnesota, and plaintiff, in connection with other initial or intermediate carriers, transported them to Duluth, Minnesota. Plaintiff submitted its bills at full commercial rates and by mistake they were paid by defendant’s disbursing officers as rendered. Upon refusal of the plaintiff to make refund the accounting officers, over plaintiff’s protest, deducted from other bills of plaintiff sufficient to reduce the compensation to a land-grant basis. This deduction amounted to $351.55.
In March, April, and May, 1920, various parties consigned to the Fleet Corporation at Tacoma, Washington, from Seattle, Aberdeen, and Raymond, in said State, other property of the United States. Plaintiff transported these shipments as required and upon delivery rendered its bills to the Government at full commercial rates. These bills also were paid as rendered, and later, upon plaintiff’s refusal to make any refund, the accounting officers, in settlement of other items, withheld over plaintiff’s protest sufficient to reduce said commercial rates to a land-grant basis, the difference being $533.68.
These differences, totalling $7,831.26, plaintiff seeks to recover, abandoning all items on transportation moving subsequent to the act of June 7,1924 (43 Stat. 477, 486), limiting freight charges on Government property and troops over all land-grant roads to 50 per cent of rates charged the public.
Plaintiff contends, (1) that the organic act of July 2, 1864 (13 Stat. 365), section 11 of which is quoted below, did not of itself permit payment at less than full commercial rates, nor did any subsequent act or regulation, prior to June 7, 1924, limit compensation on other than Army transportation, and transportation in the Postal Service, to anything less than commercial rates; (2) that in consequence of the statutory situation and the fact that the property was not “ moved by the Quartermaster Corps, United States Army,” the “equalization” agreement, hereinafter referred to, can not be resorted to.
The comparatively short line extending from St. Paul to Duluth, Minnesota, was organized under an act (act of *572 March 3, 1857, supra) which provided that “ the said railroad shall be and remain a public highway for the use of the-Government of the United States, free from all toll or other charge upon the transportation of any property or troops of the United States,” a form of enactment used in connection with the organization of the majority of land-aided roads.. What we shall say with respect to plaintiff’s main line, extending from Duluth to Portland, will have its application-to the short line, as will appear.
At the time the transportation in this case took place, plaintiff, together with other carriers parties to the movements, had agreed with the defendant “to accept for the transportation of property moved by the Quartermaster Corps, United States Army, and for which the United States Government is lawfully entitled to reduced rates over land-grant roads, the lowest net rates lawfully available, as derived through deductions account of land-grant distance from a lawful rate filed with the Interstate Commerce Commission applying from point of origin to destination at time of movement.” This general acceptance was limited as follows:
“ On traffic destined to or received from points on lines of other carriers this agreement will only apply in connection with such carriers as have filed with the Chief, Quartermaster Corps, a general agreement in form substantially as-above.”
The movements in this case were made while this agreement was in force. The question therefore is not, primarily what, without the agreement, the plaintiff would be entitled’ to under the statute, except that in any event the plaintiff' is not entitled to more than the statute allows. If the agreement provides less compensation to the plaintiff than what,, without the agreement, the plaintiff would be entitled to, it may not have more.
It is immaterial whether any of these shipments actually moved over land-grant roads, except that, in so doing, the carriers may not collect more than is proper, under the statutes or regulations pursuant thereto, for that portion of land-aided line actually traversed. There is no contention in this case that anything less is due the carrier than can be computed under the terms of its “ equalization ” agreement.
*573 The agreement is limited in its terms to property “ for which the United States Government is lawfully entitled to reduced rates over land-grant roads.” The plaintiff’s contention is that the agreement is not here applicable because, to begin with, the statutes do not give to the Government reduced rates over certain of plaintiff’s lines involved therein, on property the transportation of which is not payable out of an appropriation for the Army, or not in Postal Service. That is to say, Congress, had not, at the time these movements took place, exercised the regulatory power given it under the granting act of July 2,1864 (13 Stat. 365),.except as to postal and Army transportation. Section 11 of that act is as follows:
- “ * * * said Northern Pacific Eailroad or any part thereof shall be a post route and a military road .subject to the use of the United States for postal, military, naval and all other Government service, and also subject to such regulations as Congress may impose restricting the charges of such Government transportation.”
Plaintiff contends that as to property of the United States, not in the Postal Service or defined as Army transportation, the Government is not lawfully entitled, under the statute, to reduced rates. Assuming here that the property was transported in the Government service, we think that the Government is entitled to reduced rates thereon under this statute. That Congress did not impose the restrictive regulations provided for must be admitted, and were we without the equalization agreement before us, it might be said that no deductions could be made from rates charged the public. But the agreement is in general terms, and it may not be said that as to property of the United States the Government is not “ entitled to reduced rates over land-grant roads.”
On property of the United States, which the. lading in this suit is, the Government is entitled to reduced rates over land-grant roads.
In Atchison, Topeka & Santa Fe R. R. Co. v. United States, 15 C. Cls. 126, this court had before it the question of the “ fair compensation * * * for the actual cost of *574 transportation and such part of the profits upon transportation as are earned ” on Army business by a land-grant -carrier organized under section 3 of the act of March 3, 1863 (12 Stat. 772, 773), that “the said railroads and branches shall be and remain public highways, for the use of the Government of the United States, free from all toll ■or other charge upon the transportation of any property or troops of the United States.” This court, following the rule laid down in Lake Superior & Mississippi R. R. Co. v. United States, 93 U. S. 442, that this provision did not require the land-aided carrier to transport Government property and troops free of charge, fixed such fair compensation at 50 per cent of rates charged the public. While this decision applied specifically to Army transportation, it has been applied in practice apparently to transportation of property of the United States regardless of the particular Government department or establishment appearing as the shipping agent. By far the greater part of the organic land-grant acts have provisions the same as section 3, supra, ■of the act of March 3, 1863. The organic act under which plaintiff’s line from Ashland, Wisconsin, to Portland, Oregon, was constructed, is one of the very few exceptions to this form of enactment.
Were another equalizing carrier plaintiff herein, founding a claim upon transportation the net rate for which had been ■computed in part via plaintiff’s lines — organized under said act of July 2, 1864 — and this other carrier were organized under a statute with decisions or regulations prohibiting payment in excess of 50 per cent of the public rates, it could not be said that for the Government property shipped, the United Spates was not lawfully entitled to reduced rates -over land-grant roads. It is decidedly forcing the argument to say that, because over one land-grant road net rates are not proper, there is no Government property for which the United States is entitled to reduced rates. The sounder conclusion, and, we think, the correct one, is that the property embraced in this suit was property for which the United States Government was lawfully entitled to reduced rates over land-grant roads. It will be observed that the .agreement applied to traffic from or to points on other *575 lines, as well as to traffic confined to plaintiff’s lines, organized under the act of July 2, 1864. Plaintiff’s lines were land-grant roads, and as such rates over them might under the statutes be restricted. To be sure, no department of the Government might restrict them except Congress, but plaintiff might voluntarily agree to restrict them as though, they had been restricted by congressional enactment.
Had this property been moved by the Quartermaster Corps, as could have been done under the act of July 5,. 1884, 23 Stat. 107, 111, the agreement to equalize would, still by its terms be restricted to “ the lowest net rates lawfully available.” “Available ” here means not simply those rates computed on the basis of the actual route taken by the shipment, but net rates that, by comparison with competing routes, turn out to be the lowest rates. Thus, on a. shipment from coast to coast, moving by way of the Northern Pacific lines, the lowest net rates applicable to Army transportation would not be computed by way of the Northern Pacific if some other proper route made a less net rate.. So that here we have a situation where were a shipment to originate with the Fleet Corporation, be billed on a quartermaster’s bill of lading, and move in part over plaintiff’s main lines, it would still come within the terms of the equalization agreement.
The final, and we think determining question presented, is whether, in order to get the benefit of the equalization agreement, the shipment must have been moved by the Quartermaster Corps. The agreement is with the defendant, acting by and through the Quartermaster General of the Army. The agreement, as published, is not only with this plaintiff but with many other carriers, and it may not be said that the application of it generally by carriers throughout the United States is not persuasive, especially where the agreement is in daily operation over a long period of time,'’ business is secured under it, and there is a like application of it by defendant’s shipping and accounting-officers, whose decisions as to what carriers are to get Government business is admittedly governed by the accepted, practice.
*576 The Comptroller of the Treasury, April 21, 1915, 21 ■Comp. Dec. 744, had before him the case of the Central of Georgia Railway Co. The company contended that its .agreement to equalize land-grant rates was limited to business handled by the Quartermaster’s Department, United •States Army. Its agreement was in terms restricted to property “ moved by the Quartermaster’s Department, U. S.'Army.” The comptroller said:
. “ This agreement is in form similar to that filed with the Quartermaster General, United States Army, of about'two hundred railroad companies, being practically all the carriers furnishing transportation for the Government that come in competition with the land-grant roads. Agreements similar to the foregoing have been in effect for many years.
“ These agreements though in terms applying only to ■movements of freight by the Quartermaster’s Department, United States Army, have been regarded by both the carrier and the Government as applying on all Government business. The list of agreement roads is published from time to time by the Quartermaster General, and has been used by all departments of the Government as applicable to each. And the Government business has therefore been Íiven to such nonland-grant lines with said understanding. (therwise the Government business would probably have been given to the land-grant lines whenever practicable.
$ ‡ $ * *
“ If the claimant desires to impose such a limitation on its ¡agreement of equalization and will serve the proper notice on the administrative officers of the Government, said limitation will be respected hereafter.”
We are not advised that the general application of the equalization agreements has been otherwise than as stated by the Comptroller of the Treasury. In view of this long-continued construction and application of the agreements, the. distribution of Government transportation business accordingly, and the absence of any showing that plaintiff has .served the notice specified by the comptroller, which we think is a reasonable requirement, plaintiff should not recover. Departmental construction must be considered. United States v. Gilmore, 8 Wall. 330.
“ Equalization ” agreements have been in effect many years. Plaintiff was an equalizing carrier as early as June *577 21, 1901. War Department General Orders, No. 178, issued -October 23, 1905. By its conduct it could have waived the requirement that the various Government departments entrust their shipments to the Quartermaster Corps. Whitsell v. United States, 34 C. Cls. 5.
The plaintiff in this case submitted all its bills to the defendant at full tariff rates, and as to many of them protested against the application of land-grant deductions. The specific grounds of the protest do not appear. Since, however, none of these shipments pertained to any Government service except that of the Fleet Corporation, it may nof be ■assumed that the protest was against the applicability of 'the equalization agreements to Government property other than that moved by the Quartermaster Corps, or against the applicability of land-grant deductions over plaintiff’s lines to other than Army and postal transportation. The -exclusive nature of the business involved leads to the inference that the gravamen of plaintiff’s complaint was the nature of the Fleet Corporation, that property pertaining thereto was not “ property of the United States,” or in Government service. Plaintiff here in court abandons its contention that such property is not the property of the United ■States, and asks dismissal of its petition without prejudice •as to those items of transportation subsequent to .June 7, 1924, the date of the act, 43 Stat. 477, restricting rates on property of the United States moving over land-aided roads.
If the protests were directed to the matter of ownership, which the circumstances fairly indicate, their precise terms not being in evidence, the effect .of them is lost. The fact is, and it is so found, that all the property shipped belonged to the United States. We think the protest must be of such :a nature as to put the Government upon notice as.to the protestant’s true position, and not he calculated to mislead.
The court will take judicial notice of the fact that other departments of the Government than the War Department, ■the Post Office Department, and the Fleet Corporation are sending shipments to and fro throughout the land. We think that the reported decisions and the evident practice of the accounting officers raise a presumption that plaintiff *578 affirmatively acquiesced in the application of the equalization agreement to Government business generally. This, presumptive acquiescence in the application of the agreement may not, we think, be rebutted by a protest that does not put the Government upon more specific notice. St. L., B. & M. Ry. v. United States, 268 U. S. 169, 175. Protest against the application to property of one establishment,, singled out of many others, tends rather to negative objection to the application on civilian business generally. The-rule of expressio unius est exclusio alterius applies.
Were the court to hold that reduced rates to the Government on the business here in question were not effective over plaintiff’s lines, but that it was immaterial whether the Quartermaster Corps tendered the shipments, no judgment could be given because the alternative net rates, considering-the Northern Pacific as a nonland-grant line, do not appear..
The plaintiff is not entitled to recover, and its petition will be dismissed. It is so ordered.
Whaley, Judge; Littleton, Judge; Green, Judge; and Booth, Chief Justice, concur.