SOUTHERN PAC. CO. v. UNITED STATES.

Nos. 45952 and 46012.

Court of Claims.
Oct. 7, 1946.

Lawrence Cake, of Washington, D.C. (C. O. Amonette, of San Francisco, Cal., on the brief), for plaintiff.

S. R. Gamer, of Washington, D. C., and John F. Sonnett, Asst. Atty. Gen. (Louis R. Mehlinger, of Washington, D. C., on the brief), for defendant.

Before WHALEY, Chief Justice, and LITTLETON, WHITAKER, JONES, and MADDEN, Judges.

WHALEY, Chief Justice.

These two cases were consolidated in a single report of the commissioner, and they have been briefed and argued together. There is no substantial dispute about the facts, and on the law the cases are not to be distinguished.

The plaintiff is a common carrier by railroad and, during the months of August, September, October, and November of 1941, in participation with other such carriers, transported from interior points to San Francisco motor vehicles and parts consigned to China Defense Supplies. Inc., destined eventually to aid the Chinese in the defense of their country against the Japanese.

The shipments en route were the property of the United States for delivery to China Defense Supplies, Inc., which was acting on behalf of the Republic of China.

Under the terms of the Government bills of lading, to which the shipments were subject, the plaintiff was the collecting carrier and for services rendered billed the defendant at full tariff rates. The defendant paid less than the full tariff rates, deducting an aggregate of $61,314.04 for "land grant" or "land-grant equalization," and the plaintiff sues for recovery of this deduction.

Recovery depends upon the application to be made of Section 321 of the Transportation Act of 1940, 54 Stat. 898, 954, 49 U.S.C.A. § 65, and in particular to the question whether the service here rendered was or was not "transportation of military or naval property of the United States moving for military or naval and not for civil use."

Prior to September 18, 1940, the effective date of the Transportation Act of 1940, railroads that had been aided by grants of public lands and carriers "equalizing" with them, had carried Government freight at reduced rates, calculated according to certain formulae evolved to carry into effect the statutes making the grants. For a review of this situation see Northern Pacific R. Co. v. United States, 72 Ct.Cl. 563.

The Transportation Act of 1940 effected an exception to this situation in that it restricted land-grant deductions, as far as Federal property was concerned, to "transportation of military or naval property of the United States moving for military or naval and not for civil use." The sole question here, then, is was the movement of the property thus transported that kind of transportation. If it was, then the plaintiff may not recover, if it was not the plaintiff must prevail.

Section 321, as far as it is relevant, is set forth in the Court's special findings. The plaintiff argues that inasmuch as the transportation referred to is therein stated as an exception, the exception should be strictly construed. But in realty the whole section constitutes an exception to the law in force for many years, and we cannot overlook the setting of this section in the statutory field.

█ We agree with the District Court, in Southern Pacific Co. v. Defense Supplies Corp., 64 F.Supp. 605, 608, in an opinion handed down by Judge Goodman, that the terms "civil" and "military" as used in the Act are "mutually exclusive." Use of the expression "and not for civil use" is clearly an intention that no construction shall be given the term "military" that will include the idea of civil use. That is to

say, the term "military" is to be given a strict construction.

But the motor vehicles here described were in no sense for civil use. They not only conformed structurally to military specifications, but they were specially designated in the requisition made by the Republic of China upon the Government of the United States, under the Lend-Lease arrangement, as for "Army use."

■ That the shipments were not for "civil" use is quite certain, and the plaintiff does not maintain that they were for "civil" use. The argument goes that they were for *disposition* to a foreign government, as distinguished from *use*. We are not impressed with this argument. The United States was deeply concerned as to their use, and it is manifest that the reason they were for delivery to the Republic of China was that they were to be *used* by the Chinese Army, that is, intended for military and not for civil use.

The requisitions, certified copies of which are in evidence, are on a form designated "Form 1." This form has a space calling upon the applicant to state whether the articles desired are for Army, Navy, Air, or Commercial use. The applicant designated them as for "Army use," and the requisitions were honored as submitted.

The inevitable conclusion must be that the articles in transit were for military and not for civil use.

■ The remaining question is whether the military use referred to in the Transportation Act of 1940 is to be confined to use by the Army of the United States.

In Powell v. United States, D. C., 60 F.Supp. 433, 437, affirmed on appeal, 4 Cir., 152 F.2d 228, a case under the same statutory provision, but involving shipments of phosphate rock and superphosphate, ultimately destined to Great Britain for agricultural purposes, the District Court, by Judge Hutcheson, propounded two questions to be answered, the first, whether under the Transportation Act of 1940 the phosphate rock and superphosphate were military or naval property of the United States, and second, whether it was moving for military or naval and not for civil use. As to the second question the Court said:

"The second question does not involve a consideration of the nation by which the property might be put to military or naval use. Such use of the property by a power other than the United States would seem to be such military or naval use as would be sufficient for the requirement of the Act."

With this conclusion we agree. The United States Government, acting in its sovereign capacity, chose the method it would pursue in the defense of the country, and that defense was inherently military in its nature, in the face of an aggressive, potential enemy. It matters not that it was defense as distinguished from offense. Furnishing of military equipment for the use of the Chinese Army, under the Lend-Lease program, was a sovereign act based on military considerations, and if the same object, the defense of the country, could be obtained by supplying the Chinese Army with military equipment as by supplying it to the Army at home, there is no distinction to be made in the nature of the transportation under the land-grant acts.

The plaintiff is not entitled to recover in either case. The two several petitions are dismissed, and it is so ordered.

JONES, WHITAKER, and LITTLETON, Judges, concur.

MADDEN, Judge, took no part in the decision of this case.